UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| POWDER COATING CONSULTANTS,  : | | |
|     Plaintiff,   : | | 09cv200(WWE) |
|            v.   : | | |
| THE POWDER COATING INSTITUTE,  : | | |
|     Defendant.   : | | |

MEMORANDUM OF DECISION ON MOTION TO DISMISS

In this action, plaintiff Powder Coating Consultants ("PCC") maintains that defendant The Powder Coating Institute ("PCI") is unfairly competing against it. Plaintiff alleges breach of contract, breach of covenant of good faith and fair dealing, negligent misrepresentation, promissory estoppel, and violation of the Connecticut Unfair Trade Practices Act ("CUTPA").

Defendant has filed a motion to dismiss for lack of personal jurisdiction.

BACKGROUND

Plaintiff's complaint alleges the following factual background, which is augmented by facts supported by evidentiary materials obtained through jurisdictional discovery.

Plaintiff PCC is an engineering firm that specializes in the use of powder coating technology. PCC advises members of the powder coating industry on the purchase and use of powder coating equipment. PCC also advises the public on powder coating processes and on employee training.

1

Defendant PCI was formed in 1981 as a non-profit organization. According to its by-laws, PCI's purposes include promoting the application and utilization of powder coating technology among industrial finishers and disseminating knowledge of powder coating's added value and performance benefits to the industry and consumers.

PCI has different levels of membership and advertises its benefits to both manufacturers and consultants. In order to join PCI, each member must pay annual dues of a significant amount for the purpose of availing itself of the membership benefits, which include PCI's support of the member's business in the powder coating industry.

PCI's Membership Directory states that it will not "play any role in the competitive decision of its members or their employers, or in any way restrict competition in the finishing industry."

PCC has been a dues-paying member of PCI for more than 18 years.

In May 2008, Steve Houston was appointed Executive Director of PCI. In June 2008, Houston announced that PCI would be increasing staff, creating value-added membership and offering laboratory testing.

On January 5, 2009, PCI announced that Rodger Talbert was taking a position as Technical Director. PCI stated that Talbert would "act as the technical liaison between [PCI] and the marketplace." PCI solicited donations of equipment from its members for Talbert to use as part of PCI's consulting services, including trouble shooting manufacturing problems and training employees.

Prior to his appointment, Talbert worked at R. Talbert Consulting, Inc., which offered the same consulting services as PCC, advising industry members and

consumers about powder coating equipment and processes. Talbert Consulting was in direct competition with PCC. However, Talbert's business became part of PCI's operations, which is now engaged in direct competition with certain of its members, including PCC.

PCC alleges that PCI's direct competition with its membership is a breach of the membership contract and breach of the covenant of good faith and fair dealing. The same factual predicate underlies plaintiff's claims for negligent misrepresentation, promissory estoppel and violation of CUTPA.

## DISCUSSION

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "plaintiff bears the burden of showing that the court has jurisdiction over the defendant." In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003). Where the the parties have conducted jurisdictional discovery, "the plaintiff's prima facie showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant." Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990). To determine personal jurisdiction, the Court must consider the facts as they exist at the time of plaintiff's filing. Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria, 937 F.2d 44, 52 (2d Cir. 1991). Thus, the Court must consider PCC's contacts with Connecticut as of February 2009.

In Connecticut, the court makes a two-step inquiry to determine whether personal jurisdiction exists. Bensmiller v. E.I. Dupont de Nemours & Co., 47 F.3d 79, 81 (2d Cir. 1995). The court first determines whether the exercise of jurisdiction over

3

the party is conferred by Connecticut's long-arm statutes.  If jurisdiction is permissible under the long-arm statutes, the court determines whether the exercise of jurisdiction under the statute comports with the provisions of the Fourteenth Amendment's Due Process Clause.  <u>Metropolitan Life Ins. Co. v. Robertson-CECO Corp.</u>, 84 F.3d 560, 567 (2d Cir. 2006).

<u>Connecticut Long-Arm Statute</u>

Connecticut General Statutes ("CGS") § 33-929(e) provides that "every foreign corporation which transacts business in this state [without a certificate of authority from the Secretary of State] shall be subject to suit in this state upon any cause of action arising out of such business."  CGS § 33-929(f) provides:

> Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows:  (1) Out of any contract made in this state or to be performed in this state; (2) out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state; (3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers; or (4) out of tortious conduct in this state whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.

In support of its motion to dismiss, PCI's Houston avers that PCI maintains a website but it does not transact business in Connecticut and does not repeatedly solicit business in Connecticut.

4

The Court finds that plaintiff has proffered sufficient proof that PCI has repeatedly solicited business in Connecticut to sustain its burden that CGS § 33-929(f)(2) is satisfied.  A foreign corporation that takes affirmative measures to attract Connecticut residents to transact business with it can reasonably foresee "its amenability to suit in Connecticut by persons raising claims similar to those of the plaintiffs when it solicited those persons' business in Connecticut."  Thomason v. Chemical Bank, 234 Conn. 281, 298-99 (1995) (trustee bank that placed advertisements that specifically encouraged residents to transact banking business with it could reasonably foresee being sued in Connecticut).

In considering solicitation pursuant to section 33-929(f)(2), the Court should "take into account the totality of business allegedly solicited by the defendant in this state, including but not limited to transactions between the defendant and the underlying plaintiffs."  Pitruzello v. Muro, 70 Conn. App. 309, 318-19 (2002).  Connecticut courts apply a broad interpretation of solicitation in the context of section 33-929 and have focused upon whether a defendant's activities are directed at increasing that defendant's general consumer bases.  See Cotnoir v. St. Francis Hosp. and Med. Ctr., 2009 WL 5698521 at *9 (Conn. Super. Ct. 2009) (citing cases).

PCI retains members located in Connecticut and maintains a mailing list that contains 197 addresses in Connecticut.  Through the mail and e-mail, PCI sends its Connecticut members invoices accompanied by brochures advertising  training events, trade shows, magazine advertisement space, and publications available from PCI for a fee beyond the membership dues.   PCI sends "Powder Coated Trough" to its members and non-members on PCI's mailing list, which includes 197 addresses in Connecticut.

PCI sells advertising space in "Powder Coated Trough,"  In addition, PCI sells advertising and exhibition space for their trade shows with a discount for members. Plaintiff PCC has purchased both magazine advertising space and exhibition space at every PCI trade show since 1990, with the exclusion of the two recent shows held in 2009.

Although PCI has not achieved a significant membership presence in Connecticut, a "plaintiff need only demonstrate that the defendant could reasonably have anticipated being haled into court here by some person who had been solicited in Connecticut and that the plaintiff's cause of action is not materially different from an action that might have resulted directly from that solicitation" to properly state a cause of action under CGS § 33-929(2).  Thomason, 234 Conn. at 298.  Defendant asserts that its activities are targeted to promote the powder coating industry rather than increase its membership.  However, the solicitations of Connecticut residents are also activities to increase its consumer base.  These solicitations are repeated and on-going so that it is reasonably foreseeable that PCI would be haled into court in Connecticut with regard to the business sought through its solicitations.

In this instance, the alleged breach of contract relates directly to the membership sought through these solicitations, although CGS § 33-919(f)(2) does not require that the cause of action and the corporation's contact with the state be causally related. Milne v. Catuogno Court Reporting Svs. Inc., 239 F. Supp. 2d 195, 200 (D. Conn. 2002).  Accordingly, the Court finds that jurisdiction under the Connecticut long-arm statute is met.

Due Process

The due process clause permits in personam jurisdiction over a nonresident corporate defendant that has certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.  International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

Minimum Contacts

The court must first determine if the defendant has minimum contacts with the forum.  Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 568 (2d Cir. 1996).  Either specific jurisdiction or general jurisdiction can satisfy the constitutional requirement of sufficient minimum contacts between the defendant and the forum.  Milne, 239 F. Supp. 2d at 203.  "Where the claim arises out of, or relates to, the defendant's contacts with the forum—i.e., specific jurisdiction—minimum contacts exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there."  Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 127 (2d Cir. 2002).  General jurisdiction may be asserted regardless of whether the claim arises from the corporation's forum contacts only where these contacts are continuous and systematic.  U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd., 241 F.3d 135, 152 (2d Cir. 2001) .

As previously discussed relevant to the long-arm statute, specific jurisdiction exists because the claims at issue arise from PCI's contact with Connecticut residents. Further, general jurisdiction also exists because PCI has maintained a continuous and repeated contact with Connecticut through its membership and trade magazine mailings and solicitation of advertising and exhibition space to Connecticut entities on its mailing

list. It has also entered into contracts with Connecticut residents for such advertising and exhibit space.

### Traditional Notions of Fair Play and Substantial Justice

A court must also determine whether the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice or whether it is reasonable under the circumstances of a particular case. International Shoe, 326 U.S. at 316.

Whether it is "reasonable" to exercise jurisdiction in a particular case depends on "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 568 (2d Cir. 1996). Here, the record indicates that PCI's contacts with Connecticut rendered foreseeable suit in this forum. There is no indication that litigation of this contract claim in Connecticut will present an undue burden. PCC has an obvious interest in obtaining convenient and efficient relief of this action in this forum where its business is located. Similarly, Connecticut has an interest in having a claim of harm to a Connecticut business adjudicated in Connecticut. Further, the Court finds that no issues concerning efficient administration of justice, such as the location of witnesses and evidence, bar jurisdiction in Connecticut. The

federal district court is accustomed to litigation of contractually-based claims that involve citizens of different states.  Accordingly, the exercise of personal jurisdiction in Connecticut is reasonable.  The motion to dismiss will be denied.

## CONCLUSION

For the foregoing reasons, the motion to dismiss [doc. #17] is DENIED.

_____/s/_____
Warren W. Eginton
Senior United States District Judge

Dated this 12th day of February, 2010 in Bridgeport, Connecticut.